[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13243
Non-Argument Calendar
_____

Agency No. A200-736-979

ELEONORA ALEKSEYEVNA LINYUSHINA,
a.k.a. Eleonoza Linyushina,
ANZOR ASLANOVICH MATSEV,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 24, 2020)

Before JORDAN, LAGOA, and ED CARNES, Circuit Judges.

PER CURIAM:

Eleonora Linyushina and her husband, Anzor Matsev, petition for review of the Board of Immigration Appeals' decision upholding the denial of their request for asylum. Linyushina claims that she was kidnapped, beaten, nearly raped, and threatened with death by the authorities in her native Russia because she planned to testify as an alibi witness at the trial of an accused criminal. Because Linyushina did not administratively exhaust one of her contentions, we dismiss the petition in part for lack of jurisdiction. And because she did not establish a nexus between her claimed persecution and any protected ground, we deny the remainder of the petition.

I.

In 2009 the Russian authorities arrested a friend of Linyushina's, Zalim Shibzukhov, and accused him of kidnapping a militia officer and of unlawfully carrying weapons.[1] Zalim's father, Boris Shibzukhov, contacted Linyushina and told her that he was looking for an alibi witness for Zalim. After consulting some text messages saved on her cell phone, Linyushina remembered that she had been with Zalim on the day of the alleged kidnapping, and she told Boris that she wanted to help her friend. Boris put her in touch with Zalim's attorney.

---

[1] Our recitation of the facts is based on Linyushina's testimony before the immigration judge. Although the immigration judge found that Linyushina was not credible, the Board did not adopt that finding and instead proceeded on the assumption that Linyushina was credible. We will proceed on that assumption too, because any credibility findings by the immigration judge that the Board did not reach are not properly before this Court. See Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016).

After talking to the attorney, Linyushina went to the police station to meet with the investigator in charge of Zalim's case. She was turned away. A few days later, she came back and caught up with the investigator in the hallway. He told her that he was busy, but she insisted that her testimony was "very important" and would not take long. The investigator grabbed her by the arm and told her that the case against Zalim was "clear" and they would not need her testimony. He also warned her that if she tried to help Zalim, she would "attract bad things to [her]self."

Because the investigator wouldn't listen to her, Linyushina met with Zalim's attorney so that he could take her statement about where Zalim was and what he was doing on the day of the alleged kidnapping. And she gave him the names of some other people who were with her and Zalim that day. The threats started a week later. They began with an anonymous text message warning Linyushina to withdraw her testimony or she was "going to regret it." She also started getting anonymous threats on social media calling her a "traitor" who "[didn't] belong in Russia."

Some time later, Boris invited Linyushina to a small rally in support of Zalim outside the prosecutor's office. She went. Minutes after the rally started, militia officers arrived to break it up. They pushed Linyushina to the ground and beat her so violently with a baton that she lost consciousness. She came to as the

3

officers were forcing her into the back of a police car.  They took her to the police station — the same one where she had met with the investigator earlier — and detained her there for five hours.  During that time, only one person came in to see her.  It was the same investigator she had met before, who told her: "You see?  I had warned you."

Five days before she was scheduled to testify in court, Linyushina was standing outside a building at midnight when she was grabbed by two masked men and thrown into a car.  They brought her to a room containing only a table and two chairs.  A masked man grabbed her, put her in a chair, and told her: "I think you know why you're here."  When Linyushina shook her head "no," the man punched her in the chest.  He told her: "If you are going to this bastard's trial, you are going to regret it, and if you are going to tell anybody what happened to you, we're going to kill you and your parents."  After that threat the masked man attempted to rape her, and when she resisted, he beat her until she lost consciousness.  When she came to, two masked men put a bag over her head, brought her back to the car, drove her to a small village, and threw her out onto the ground.

Linyushina flagged down a passing motorist who told her that she was in the village of Nalchik.  Coincidentally, that was where Linyushina's grandmother lived, so she hitched a ride to her grandmother's house.  She spent two weeks there before she learned that she had been approved for a United States visa (a

nonimmigrant J-1 visa).  Then she went home, gathered her belongings, said goodbye to her parents, and left the country.

## II.

In 2010 the United States Department of Homeland Security commenced removal proceedings against Linyushina and her husband Matsev.[2]  Linyushina filed an asylum application listing her husband as a derivative beneficiary.[3]  See 8 U.S.C. § 1158(b)(3)(A).  After years of proceedings, an immigration judge issued a decision in 2017.  He found that Linyushina was not credible and, even if she were credible, her asylum application should be denied on the merits.  He concluded that the harm Linyushina described did "not rise to the high level of persecution," that she failed to establish a well-founded fear of future persecution, and that she failed to link her claimed persecution to any protected ground.[4]

Linyushina appealed to the Board, which dismissed her appeal.  The Board did not address the immigration judge's credibility findings and instead upheld his asylum determination on the merits.  It agreed with him that the harm Linyushina

---

[2] Linyushina and her husband met in 2008 while they were both studying in Maryland. They married after Linyushina returned to the United States in 2009.  He is also a citizen of Russia.

[3] Matsev did not file an application for relief on his own behalf.  He joins his wife in petitioning for review of the decision on her asylum application.

[4] Linyushina also filed requests for protection under the Convention Against Torture and for withholding of removal, both of which were denied.  She does not contest those denials in this Court.  All we are called upon to decide is whether the Board erred by denying her asylum application.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (noting that issues not raised in the petitioner's brief are abandoned).

suffered in Russia was not persecution, that she did not establish a well-founded fear of future persecution, and, in the alternative, that she failed to show a nexus between her past or future persecution and a protected ground.

### III.

Linyushina contends that the Board erred at every step of the way. She asserts that the harm she suffered in Russia was persecution, that her actual or imputed political opinion was one central reason for that persecution, and that she has a well-founded fear of future persecution.

We review the Board's decision as the agency's final judgment. Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016). Where the Board agrees with the immigration judge's reasoning, we review that reasoning to the extent of the agreement. Id. We review de novo the Board's legal conclusions, subject to any deference due under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), and we review the Board's factfindings for substantial evidence. Gonzalez, 820 F.3d at 403. The substantial evidence test is "highly deferential," requiring us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1351 (11th Cir. 2009).

An alien who arrives in or is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). To be eligible for asylum, the alien must meet the

6

statutory definition of a "refugee."  Id. § 1158(b)(1)(A).  A "refugee" includes "any person who is outside any country of such person's nationality" and is unable or unwilling to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  Id. § 1101(42)(A).  The burden to prove refugee status is on the applicant.  Id. § 1158(b)(1)(B)(i).  "[T]he applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant."  Id.

We need not address Linyushina's arguments about what does or does not rise to the level of persecution because we agree with the Board that she failed to establish a nexus between her claimed persecution and a protected ground. Linyushina asserts that the Russian authorities targeted her either because of her political opinion or because they wrongly imputed a political opinion to her.  See Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (stating that political opinion persecution may be because of the alien's "actual or imputed political opinion") (emphasis added).  But the Board found otherwise.  It determined that Linyushina had never expressed a political opinion and that the authorities had never imputed one to her.

The Board's findings are supported by substantial evidence.  Nothing in the record compels the conclusion that Linyushina was targeted because of an actual or imputed political opinion.  To the contrary, she admitted that she does not belong to any political organizations in Russia, was never politically active there, and had no trouble with the authorities before she tried to help Zalim.  She testified that she believed she was targeted because of her role as an alibi witness for Zalim, not for any other reason.  All indications are that she was right.  Her problems began when she gave an exculpatory statement to Zalim's attorney.  That was when she started receiving threats to withdraw her testimony or she would "regret it."  The first of her two detentions happened after she attended a rally in support of Zalim; while she was detained, the lead investigator on Zalim's case said that he had warned her not to get involved.  And during her second detention, when she was beaten and nearly raped, one of her captors told her: "If you are going to this bastard's trial, you are going to regret it."

Nonetheless, Linyushina argues that it is "plausible and logical" to conclude the authorities imputed a political opinion to her, namely, that she opposed the state's prosecution of suspected-but-innocent terrorists.  But "plausible and logical" is not the standard of review.  "Our inquiry is whether there is substantial evidence for the findings made by the [Board], not whether there is substantial evidence for some other finding that could have been, but was not, made."

8

Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1324 (11th Cir. 2001).

"[A] denial of asylum may be reversed only if the evidence presented by the

applicant is so powerful that a reasonable factfinder would have to conclude" she is

eligible. Id. at 1323–24. Linyushina has not presented such powerful evidence.

On this record it was reasonable for the Board to find that she was targeted because

she helped Zalim and not because the authorities believed that she held any

political opinion.

Linyushina asserts that because of her past persecution, she is entitled to a

presumption of a well-founded fear of future persecution. See Kazemzadeh, 577

F.3d at 1352–53. But her failure to link her alleged past persecution to a protected

ground means that she receives no such presumption. See id. Linyushina also

asserts, for the first time on appeal, that she has a well-founded fear of future

persecution regardless of whether she was persecuted on account of a protected

ground in the past. We lack jurisdiction to consider that assertion because

Linyushina did not raise it before the Board. See Amaya-Artunduaga v. U.S. Att'y

Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) ("We lack jurisdiction to consider a

claim raised in a petition for review unless the petitioner has exhausted his

administrative remedies with respect thereto.").[5]

---

[5] The Board did consider that issue sua sponte. But issues raised by the Board sua sponte
are not administratively exhausted. Amaya-Artunduaga, 463 F.3d at 1251 ("In sum, we think the
goals of exhaustion are better served by our declining to review claims a petitioner, without

9

Because substantial evidence supports the Board's finding that Linyushina was not persecuted on account of any protected ground, her petition for review is **DENIED IN PART**.  And because she did not raise before the Board her claim that she has a well-founded fear of future persecution regardless of whether she was persecuted in the past, her petition is **DISMISSED IN PART** for lack of jurisdiction.

---

excuse or exception, failed to present before the BIA, even if the BIA addressed the underlying issue <u>sua</u> <u>sponte</u>.").